**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------ x
MARATHON ASSET MANAGEMENT, L.P., :
                                 :
          Plaintiff,             :
                                 :
v.                               :    Civil No. 3:18-mc-35(AWT)
                                 :
DAVID DEMOS,                     :
                                 :
          Defendant.             :
------------------------------ x
```

<u>**RULING ON MOTION TO QUASH**</u>

For the reasons set forth below, Marathon Asset Management, L.P.'s motion to quash is being granted in part and denied in part.

## I.   **LEGAL STANDARD**

Federal Rule of Criminal Procedure 17(c) provides:

> A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).  Courts may modify or quash a subpoena duces tecum "if compliance would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).

Rule 17(c) is not intended to be used as a discovery device for criminal cases.  <u>United States v. Nixon</u>, 418 U.S. 683, 698

(1974) (citing <u>Bowman Dairy Co. v. United States</u>, 341 U.S. 214,
220 (1951)). Rule 17(c)'s "chief innovation was to expedite the
trial by providing a time and place before trial for the
inspection of subpoenaed materials." <u>Id.</u> at 698-99.  In <u>Bowman</u>
<u>Dairy</u>, the Court quoted the following statement by a member of
the advisory committee:

> [W]hile normally under a subpoena books and other
> things called for would merely be brought into court
> at the time of the trial, let us say immediately
> before they are to be offered in evidence, there is a
> provision in this rule that the court may, in the
> proper case, direct that they be brought into court in
> advance of the time that they are offered in evidence,
> so that they may then be inspected in advance, for the
> purpose of course of enabling the party to see whether
> he can use it or he wants to use it.

341 U.S. at 220 n.5 (citing Statement of Mr. G. Aaron
Youngquist, Member of the Advisory Committee, Federal Rules of
Criminal Procedure, Proceedings of the Institute on Federal
Rules of Criminal Procedure (New York University School of Law,
Institute Proceedings, Vol. VI, 1946) ¶ 167-68).  "It is
therefore necessary to guard against action under Rule 17(c)
which, contrary to its spirit and purpose, is aimed at obtaining
discovery." <u>United States v. Jannuzzio</u>, 22 F.R.D. 223, 227 (D.
Del. 1958) (citing <u>State v. Hutchins</u>, 138 A.2d 342, 345-46 (Del.
Super. 1957)).

A party seeking pretrial production and inspection of documents and other objects under Rule 17(c) must satisfy four requirements.  That party must show:

(1)  that the documents and/or objects are evidentiary and relevant;

(2)  that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3)  that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4)  that the application is made in good faith and it is not intended as a general "fishing expedition."

Nixon, 418 U.S. at 699-700.

Under Nixon, the party seeking production must designate with specificity the documents or other objects to be produced. Id. at 700.  The specificity requirement ensures that a 17(c) subpoena is not turned into a "fishing expedition to see what may turn up." Bowman Dairy, 341 U.S. at 221.  "[T]he subpoena must refer to specific documents, or at least, to specific kinds of documents." United States v. Carroll, No. 96-20024, 1996 WL 442213, at *3 (D. Kan. July 3, 1996); see also United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997) (citing 2 Charles A. Wright, Federal Practice and Procedure ¶ 275 at 159 (1982)).

This requirement is satisfied if the subpoena identifies "certain documents or sharply defined groups of documents," Ruedlinger, 172 F.R.D. at 456, and must, of course, be considered in light of the circumstances of the particular case.

The requirement of specificity provides the subpoenaed party with sufficient knowledge about what documents or other objects are being sought to formulate objections related to relevancy or admissibility.  See Ruedlinger, 172 F.R.D. at 456. Failure to set forth "with sufficient specificity the evidentiary nature of the requested materials . . . forc[es] the court to speculate as to the specific nature of their contents and its relevance." United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992).  Where the requesting party broadly requests "any and all" documents in a broad category, courts will usually narrow the request or grant the motion to quash the request. See United States v. Anderson, 31 F. Supp. 2d 933, 943 (D. Kan. 1998) (narrowing request for "any and all express or implied threats against any expected government witness"); United States v. Colima-Monge, No.96-305-FR., 1997 WL 325318, at *5 (D. Or. June 6, 1997) (quashing request for "[a]ny and all records . . . setting forth guidelines, protocol, or other regulations promulgated by any agency concerning the operation of ROCN agents and informants . . . ."); Ruedlinger, 172 F.R.D. at 456 (quashing request for any and all audit reports prepared by IRS

4

pertaining to defendant's company); <u>United States v. Jackson</u>, 155 F.R.D. 664, 668 (D. Kan. 1994) (quashing subpoenas and stating that the "subpoenas employ such terms as 'any and all documents' or 'including, but not limited to;' these are indicia of a fishing expedition"). Such broad requests, which courts often refer to as "fishing expeditions, fail to satisfy the specificity requirement."

Impeachment material or evidence that could, in turn, lead to exculpatory evidence, is not the type of evidence that is obtainable through a 17(c) subpoena. <u>See United States v. Ferguson</u>, Criminal No. 3:06CR137(CFD), 2007 WL 2815068, at *2 (D. Conn. Sept. 26, 2007) ("Neither of these types of evidence are obtainable through a 17(c) subpoena under <u>Nixon</u>."); <u>United States v. Cuthbertson</u>, 630 F.2d 139, 146 (3d Cir. 1980).

## II.   DISCUSSION

### A. Request 1

This request reads as follows:

- *Request 1*: "All Communications regarding the LXS Bond, from February 18, 2012 to Marathon's sale date, July 5, 2012."

Marathon Asset Management, L.P.'s Memorandum of Law in Opposition to Motion to Compel/Support of Cross-Motion to Quash ("Marathon Memo.") (Doc. No. 7) at 14.

Marathon moves to quash this request in its entirety.  It states that it has already searched for and produced communications concerning both the AMSI Bond and the LXS Bond. It contends that the defendant is requesting documents that are irrelevant and that contain information that can be found in its previous production, so the defendant's request is unreasonable and oppressive to Marathon.

Also, Marathon observes that the definition of "LXS Bond" in the Second Marathon Subpoena is erroneous, because Marathon did not purchase that bond from Cantor Fitzgerald, but rather sold the bond, and that the sale date was May 11, 2012. However, Request 1 refers to Marathon's "sale date," so the court concludes that the request is clear enough to be understood.  The defendant, however, continues to refer to a July sale date.  See Mr. Demos's Memorandum of Law in Opposition to Plaintiff Marathon Asset Management, L.P.'s Motion to Quash ("Demos Opp.") (Doc. No. 15) at 5 n.3.

The defendant asserts, correctly, that the documents he seeks are relevant to the charges against him, specifically, the requirement that the government prove that there was a substantial likelihood that a reasonable investor in the non-agency RMBS market would view an untrue statement as one that significantly alters the total mix of information available to the investor.  However, although the defendant has demonstrated

the relevance of such documents, he makes no showing with respect to the additional requirement that the documents sought be evidentiary.  As reflected by the discussion in Bowman Dairy and the language of the Rule, the purpose of Rule 17(c) is served only when the documents sought could be offered in evidence.

In addition, the defendant asserts that he is specifically interested in whether Stuart Goldberg of Marathon thought the LXS Bond was a risky bond that had been modeled incorrectly. However, as noted by Marathon, despite the fact that Marathon has objected to the breadth of the request, the defendant fails to "offer a set of limited search terms specific to this topic." Reply Memorandum of Law in Further Support of Marathon's Cross-Motion to Quash (Doc. No. 16) at 4.  Rather, the defendant continues to seek "all communications, such that Marathon would produce the internal communications on the issue of Marathon's understanding, at the time of its investment decision, that the LXS Bond was a risky bond that was modeled incorrectly."  Demos Opp. at 6.  Such an over-inclusive request is contrary to the requirement of Rule 17(c) that there be a sharply defined group of documents.

Thus, the motion to quash is being granted with respect to Request 1.

### B. Requests 2 and 3

These requests read as follows:

- *Request 2*: "All Communications of Stuart Goldberg, Edward Cong, Andrew Springer, and Adam Blitzer, regarding the Bonds, from seven days before the trade date, through seven days after the settlement date."

- *Request 3*: "All Communications of Stuart Goldberg, Edward Cong, Andrew Springer, and Adam Blitzer, from one day before the trade date of the Bonds, through one day after the settlement date of the Bonds."

Marathon Memo. at 14.

The parties appear to have resolved all but one aspect of their dispute with respect to these requests. While the parties have reached an agreement with respect to documents related to HVMLT 2005-9 B3, Marathon has taken the position that the Rule 17(c) subpoena did not call for documents relating to HVMLT 2005-2 2A1B because it stated that the bond was traded on February 24, 2012, when in fact it was traded on February 22, 2012. The defendant contends that:

> [t]hough Marathon and Counsel for Mr. Demos are fully aware of the specific HVMLT 2005-2 2A1B bond traded between Marathon and Cantor Fitzgerald, Marathon now seeks to use an inadvertent drafting error in the definitions section to limit the scope of production to just one of the two HVMLT bonds that it already agreed to provide in its March 21, 2018 communication.

Demos Opp. at 7. While Marathon is technically correct, in the interests of judicial economy and to avoid the delay that would otherwise result from requiring the defendant to issue a new Rule 17(c) subpoena with respect to documents as to which there

will ultimately be no basis for an objection, the court directs
Marathon to perform a search for documents with respect to HVMLT
2005-2 2A1B equivalent to the search performed with respect to
HVMLT 2005-9 B3.

Thus, the motion to quash is being denied with respect to
such documents with respect to the HVMLT 2005-2 2A1B bond and
otherwise being granted with respect to Requests 2 and 3.

### C. Request 5

This request reads as follows:

- *Request 5*: "All Communications sent by, received by,
  or copied to Edward Cong, Stuart Goldberg, and Andrew
  Springer on the following specific dates: May 18,
  2012, July 10, 2012, November 15, 2012, December 7,
  2012, and December 11, 2012."

Marathon Memo. at 16.

In response to the motion to quash, the defendant explains
that the specific dates listed in Request 5 "correlate with the
dates that Marathon ran their own BWICs in 2012."  Demos Opp. at
7.  Thus, he argues, these documents are "relevant to Marathon's
practices and its reliance on broker-dealer representations."
Id.  The defendant states that he has reason to believe that
these communications will show that the statements Goldberg made
to the government "regarding his expectation of honest[] and
accurate feedback are not credible."  Id. at 8.

While the defendant has addressed the requirement of
relevance, he makes no showing with respect to the additional

9

requirement that the documents sought be evidentiary.  In addition, he seeks these documents as impeachment material, which is not the type of evidence that is obtainable through a Rule 17(c) subpoena.  See United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial.").

Thus, the motion to quash is being granted with respect to Request 5.

**III. CONCLUSION**

For the reasons set forth above, the Marathon motion to quash (Doc. Nos. 7 and 12) is hereby GRANTED in part and DENIED in part.

It is so ordered.

Signed this 20th day of April, 2018, at Hartford, Connecticut.

                                    /s/ AWT
                                    Alvin W. Thompson
                                    United States District Judge